**In the United States Court of Federal Claims**
**BID PROTEST**

THREAT TEC, LLC,

               Plaintiff,

    v.

THE UNITED STATES,

               Defendant,

Case No. 26-150

Judge Stephen Schwartz

**PLAINTIFF THREAT TEC'S, LLC'S MOTION FOR PRELIMINARY INJUNCTION**

**AND TEMPORARY RESTRAINING ORDER**

Pursuant to 28 U.S.C. 1491(b)(1-2) and Rule 65(a) of the Rules of the United States Court of Federal Claims, Plaintiff, Threat Tec, LLC ("Threat Tec"), hereby moves for a preliminary injunction prohibiting Defendant, the  United States of America, acting by and through the United States Department of the Army ("Agency" or "Army"), from authorizing performance under a sole source contract awarded to Chitra Productions, LLC ("Chitra") under the Solicitation where Threat Tec-Yorktown JV, LLC, the joint venture for which Threat Tec is the managing member, is the incumbent. Transition has already commenced on January 13, 2026, and performance is expected to be from February 9, 2026 to February 8, 2027.

This action challenges the Agency's violation of the voluntary stay for this procurement and its award of a sole source contract to Chitra. Therefore, Threat Tec requests that this court enjoin the Agency from proceeding with its improper award to Chitra.

1

Dated: January 30, 2026

Respectfully submitted,

/s/ *Shomari B. Wade*

Shomari B. Wade
GREENBERG TRAURIG, LLP
2101 L Street, NW, Suite 1000
Washington, DC 20037
Tel: (202) 530-8515
Fax: (202) 331-3101
wades@gtlaw.com

*Counsel for Threat Tec, LLC*

Of Counsel:

Michael J. Gardner
GREENBERG TRAURIG, LLP
1750 Tysons Boulevard, Suite 1000
McLean, VA 22102
Tel: (703) 749-1303
Fax: (703) 749-1301
gardnerm@gtlaw.com

Jordan N. Malone
GREENBERG TRAURIG, LLP
2101 L Street, NW, Suite 1000
Washington, DC  20037
Tel: (202) 530-8548
Fax: (202) 331-3101
jordan.malone@gtlaw.com

Olivia C. Bellini
GREENBERG TRAURIG, LLP
1750 Tysons Boulevard, Suite 1000
McLean, VA 22102
Tel: (215) 988-7860
Fax: (703) 749-1301
olivia.bellini@gtlaw.com

**i**

**In the United States Court of Federal Claims**
**BID PROTEST**

THREAT TEC, LLC,

              Plaintiff,

    v.

THE UNITED STATES,

              Defendant,

Case No. 26-150

Judge Stephen Schwartz

**PLAINTIFF'S MEMORANDUM**
**IN SUPPORT OF ITS MOTION FOR A PRELIMINARY INJUNCTION**
**AND TEMPORARY RESTRAINING ORDER**

**Table of Contents**

I.     Question Presented.................................................................................................. 1

   A.   Whether, as an interested party and plaintiff in the present bid protest challenging the post-award notice of the bridge contract, Threat Tec has demonstrated it is entitled to a preliminary injunction under the four-factor test for injunctive relief?............................. 1

II.   Statement of the Case.............................................................................................. 1

III.  Argument ............................................................................................................... 3

   A.   Threat Tec Has Demonstrated It Will Achieve Success on the Merits............................. 4

   B.   Threat Tec Will Suffer Irreparable Harm Absent An Emergency Temporary Restraining Order ............................................................................................................... 5

   C.   The Balance of the Hardships Weigh Heavily in Favor of Threat Tec. ............................ 6

   D.   The Public Interest is Served by Imposing the Requested Temporary Restraining Order and Preliminary Injunction. ....................................................................................... 7

# TABLE OF AUTHORITIES

**Cases**

*Aegis-KK/GardaWorld Fed. Afr. v. United States*, 168 Fed. Cl. 788, 812 (2023) ......................... 7

*AGMA Sec. Serv., Inc. v. United States*, 152 Fed. Cl. 706, 741 (2021) ......................................... 7

*Akal Sec., Inc. v. United States*, 87 Fed. Cl. 311, 320 (2009). ..................................................... 6

*Am. Signature, v. United States*, 598 F.3d 816, 830 (Fed. Cir. 2010). .......................................... 7

*Comprehensive Health Servs., LLC v. United States*, 151 Fed. Cl. 200, 206 (Fed. Cl. 2020)........ 3

*Contracting, Consulting, Eng'g LLC v. United States*, 104 Fed. Cl. 334, 335 (2012) ................... 5

*Excelsior Ambulance Serv. v. United States*, 124 Fed. Cl. 581, 594 (2015).................................. 4

*FMC Corp. v. United States*, 3 F.3d 424, 427 (Fed. Cir. 1993)) ..................................................... 3

*IgniteAction JV, LLC v. United States*, 174 Fed. Cl. 62, 68 (2024)............................................ 3, 5

*Myriddian, LLC v. United States,* 165 Fed. Cl. 650, 658 (2023) ...................................................... 5

*Parcel 49C Ltd. P'ship v. United States*, 31 F.3d 1147, 1153 (Fed. Cir. 1994) ............................ 3

*Parcel 49C Ltd. Partnership v. United States*, 31 F.3d 1147, 1153 (Fed. Cir. 1994).................... 7

*PGBA, LLC v. United States*, 57 Fed. Cl. 655, 663 (2003) ........................................................ 6, 7

*Remington Arms Co., LLC v. United States*, 126 Fed. Cl. 218, 232 (2016) ................................... 5

*Serco, Inc. v. United States*, 81 Fed. Cl. 463, 502 (2008)............................................................... 6

*Transatlantic Lines LLC v. United States*, 68 Fed. Cl. 48, 56 (2005)......................................... 4, 7

*Turner Const. Co. v. United States*, 645 F.3d 1377, 1388 (Fed. Cir. 2011) .................................. 3

*URS Fed. Servs., Inc. v. United States*, 102 Fed. Cl. 674, 677 (2012)........................................... 7

**Statutes**

28 U.S.C. § 1491.............................................................................................................................. 3

iv

**Other Authorities**

FAR 3.104-7 .................................................................................................................. 4, 7

I.      **QUESTION PRESENTED**

A.      **Whether, as an interested party and plaintiff in the present bid protest challenging the post-award notice of the bridge contract, Threat Tec has demonstrated it is entitled to a preliminary injunction under the four-factor test for injunctive relief?**

II.     **STATEMENT OF THE CASE**

On February 14, 2020, the Solicitation was issued. Complaint Ex. A. The Solicitation contemplated an award of a single, Firm Fixed Price and Time & Materials contract with a period of performance that includes an eight-month base period, 30-day phase-in, and four one-year option periods. *Id.* On July 29, 2020, Threat Tec was awarded the Incumbent Contract.

On January 3, 2025, the Agency issued the follow-on Solicitation No. W911S025RA001 ("Second Solicitation"), which has been subject to numerous bid protest before GAO and this Court. Complaint Ex. C. For instance, On May 30, 2025, United Defense, LLC ("United Defense") filed a pre-award protest at GAO, arguing that the Agency was required to amend its requirements that appropriately reflect its minimum needs in response to a merger between TRADOC and the Army Futures Command in Austin, Texas. *See* B-423577. That protest was dismissed. On September 19, 2025, United Defense protested again at GAO – challenging the Agency's apparent award to Evocati JV, LLC ("Evocati"). United Defense asserted that the Agency violated the PIA when it failed to review Threat Tec's report to which disclosed that Yorktown (Evocati's Joint Venture member) improperly accessed and obtained Threat Tec's competitively sensitive information for its proposal. *See* B-423577.2. That protest was dismissed. On December 12, 2025, United Defense brought its PIA claim to the Court, which is currently pending and subject to a voluntary stay of award and performance. *See* Case No. 25-2108.

On January 20, 2026, Threat Tec learned that the Agency awarded a one-year bridge contract to Chitra, ignoring the stay at COFC and without a full and open competition. Complaint Ex. D. Transition began January 13, 2026, and performance expected from February 9, 2026 to February 8, 2027. Threat Tec is the incumbent (through Threat Tec-Yorktown JV, LLC, in which Threat Tec is the managing member) performing TRADOC G2 Operational Environment and Core Functions Services under the incumbent contract. In this contract, which is still active, Threat Tec has received strong CPARS ratings, demonstrating a proven ability to continue uninterrupted performance during any interim period. Complaint Ex. B. Despite that incumbency and capability, the Agency, without notice, awarded a one-year bridge contract to Chitra.

On January 21, 2026, Threat Tec sent the Agency a letter, which notified the Agency that (i) its award to Chitra violates the voluntary stay at the Court pursuant to United Defense's protest and (ii) Chitra's Program Manager has access to Threat Tec's proprietary information from the Solicitation and Incumbent Contract, putting the Agency on notice of a potential PIA violation and to investigate further. Complaint Ex. G.

On January 22, 2026, the Agency did not read Threat Tec's January 21, 2026 letter and instead deleted the email. Complaint Ex. H. No action by the Agency has been taken in investigating a potential PIA violation.

On January 23, 2026, Threat Tec filed a post-award protest before GAO, asserting that (i) the sole source, Bridge Contract award to Chitra violated the full and open competition requirements of CICA and in direct contravention of an agreed upon stay in United Defense's pending protest before the Court (ii) the Agency violated the PIA by awarding the contract to Chitra, whose now-Program Manager was previously employed by Threat Tec and possesses Threat Tec's proprietary, competitively sensitive information and (iii) the Agency further breached

the PIA by failing to investigate Threat Tec's report of Chitra and its own conduct, as required by the Federal Acquisition Regulation ("FAR"). Complaint Ex. I. An automatic CICA stay was issued as a result of Threat Tec's filing.

On January 27, 2026, the Agency notified Threat Tec of its approved CICA stay override, accompanied with its Determination & Findings ("D&F"). Complaint Ex. J; Ex. K. On January 29, 2026, Threat Tec filed this instant protest before the Court. *See generally* Complaint.

## III.    ARGUMENT

The Tucker Act empowers this Court to "award any relief that the court considers proper, including declaratory and injunctive relief[.]" *Turner Const. Co. v. United States*, 645 F.3d 1377, 1388 (Fed. Cir. 2011); 28 U.S.C. § 1491(b)(2). Injunctive relief is an appropriate remedy if it "enjoins the illegal action and returns the contract award process to the status quo ante." *Id.* (citing *Parcel 49C Ltd. P'ship v. United States*, 31 F.3d 1147, 1153 (Fed. Cir. 1994)) (internal quotations omitted).

In considering whether to issue a preliminary injunction, the Court is required to weigh four factors: "(1) plaintiff's likelihood of success on the merits; (2) whether plaintiff will suffer irreparable harm without the injunction; (3) the balance of the harms between the parties; and (4) the public's interest in an injunction." *IgniteAction JV, LLC v. United States*, 174 Fed. Cl. 62, 68 (2024). "No single factor is determinative, and 'the weakness of the showing regarding one factor may be overborne by the strength of the others.'" *Comprehensive Health Servs., LLC v. United States*, 151 Fed. Cl. 200, 206 (Fed. Cl. 2020) (quoting *FMC Corp. v. United States*, 3 F.3d 424, 427 (Fed. Cir. 1993)).

### A.    Threat Tec Has Demonstrated It Will Achieve Success on the Merits.

"A protester must demonstrate that but for the alleged error, "there was a substantial chance that it would receive an award -- that it was within the zone of active consideration" *Transatlantic Lines LLC v. United States*, 68 Fed. Cl. 48, 56 (2005). Success on the merits is met where a protester demonstrates that an Agency's award to a nonconforming proposal constituted a significant, prejudicial error in the procurement process. *Excelsior Ambulance Serv. v. United States*, 124 Fed. Cl. 581, 594 (2015) (finding that the actual success factor for an injunction was demonstrated in protest challenging an award to an offeror with a proposal nonconforming to solicitation requirements).

Threat Tec is likely to prevail on its bid protest claims because the record shows (a) a timely and sufficient reporting of a possible Procurement Integrity Act (PIA) violation; and (b) the Agency's failure to take mandatory action under FAR 3.104-7 before proceeding toward award. Threat Tec reported to the Agency on January 21, 2026 that it awarded the bridge contract to Chitra, whose now-Program Manager prepared Threat Tec's proposal and of knowledge to Threat Tec's proprietary and competitively sensitive information. Complaint Ex. G. Rather, instead of taking investigative measures, as required by FAR 3.104-7, the Agency went so far as to delete Threat Tec's letter and email. Complaint Ex. H. Indeed, no discernable action has been done by the Agency. Undoubtedly, the Agency has arbitrarily failed to adhere to its regulatory obligations, despite there being evidence of a potential PIA violation, and therefore Threat Tec wins on the merits.

4

B.    **Threat Tec Will Suffer Irreparable Harm Absent An Emergency Temporary Restraining Order**

Without injunctive relief, Threat Tec will suffer immediate and irreparable harm. The loss of the opportunity to compete fairly for a government contract is the exact type of injury that this Court repeatedly has found adequate to prove irreparable harm because, absent injunctive relief, there is no adequate, alternative remedy. *Remington Arms Co., LLC v. United States*, 126 Fed. Cl. 218, 232 (2016); *Myriddian, LLC v. United States,* 165 Fed. Cl. 650, 658 (2023) ("Repeatedly, the Court has determined that loss of potential work and profits from a government contract constitutes irreparable harm.") (internal quotations omitted). Irreparable harm is also shown where a protestor will be "permanently deprived of the opportunity to compete in a fair award process and will continue to lose potential profits." *Glob. K9 Prot. Grp., LLC,* 169 Fed. Cl. 116, 156 (2023); *see also Contracting, Consulting, Eng'g LLC v. United States*, 104 Fed. Cl. 334, 335 (2012) (granting permanent injunction and finding irreparable harm because the plaintiff was deprived of a fair opportunity to compete due to a flawed technical evaluation); *IgniteAction JV, LLC v. United States*, 174 Fed. Cl. 62, 72 (2024) ("Though the mere loss of money will not constitute irreparable harm, a "lost opportunity to compete in a fair competitive bidding process for a contract . . . has been found sufficient to prove irreparable harm.").

Without a TRO, performance under the bridge contract will commence and the protest and remedial process will be mooted, *fait accompli*. Transition to Chitra began January 13, 2026, and performance is expected to run February 9, 2026 to February 8, 2027. Complaint Ex. D. Commencement of performance will cause immediate loss of incumbent work and Threat Tec's

5

employees. Loss of the agreed-upon stay constitutes irreparable harm because the status quo and any protest remedies afforded to Threat Tec are undermined once performance proceeds.

Indeed, the uninvestigated PIA violation threatens disclosure and use of Threat Tec's protected information during performance. Chitra's Program Manager previously worked at Threat Tec, is presently bound by a Non-Disclosure Agreement related to the incumbent contract, and her involvement raises potential PIA concerns the Agency refused to investigate. The risk of misuse of proprietary information during performance is irreparable.

### C.      The Balance of the Hardships Weigh Heavily in Favor of Threat Tec.

The balance of hardships clearly weighs in Threat Tec's favor. In weighing the third factor for injunctive relief, "[t]he court must balance the harm plaintiff would suffer without preliminary relief against the harm that preliminary relief would inflict on defendant and defendant intervenor." *Akal Sec., Inc. v. United States*, 87 Fed. Cl. 311, 320 (2009). As this Court has long held, "only in an exceptional case would [] delay alone warrant a denial of injunctive relief, or the courts would never grant injunctive relief in bid protests." *Serco, Inc. v. United States*, 81 Fed. Cl. 463, 502 (2008) (citing *PGBA, LLC v. United States*, 57 Fed. Cl. 655, 663 (2003)).

The balance favors preserving the status quo by maintaining incumbent performance or pausing performance while the protests and required investigations proceed. The Army had months under the various protests connected to this procurement to plan for continuity and could have maintained Threat Tec's incumbency or conducted a competitive bridge contract. Any incremental delay or administrative burden on the Agency is self-inflicted by procedural noncompliance, whereas Threat Tec faces immediate loss of its contract and competitive position.

6

**D.    The Public Interest is Served by Imposing the Requested Temporary Restraining Order and Preliminary Injunction.**

The public has a strong interest in ensuring that public officials treat contractors fairly and generally obey procurement laws and regulations. *Transatlantic Lines LLC*, 68 Fed. Cl. at 56. Likewise, the public interest in honest, fair and open competition is compromised when the government strays from the requirements of the procurement laws. *Parcel 49C Ltd. Partnership v. United States*, 31 F.3d 1147, 1153 (Fed. Cir. 1994); *PGBA, LLC v. United States*, 57 Fed. Cl. 655, 663 (2003). Violations of procurement regulations undercut the public's faith in the integrity of government acquisitions. *See AGMA Sec. Serv., Inc. v. United States*, 152 Fed. Cl. 706, 741 (2021) *see also Aegis-KK/GardaWorld Fed. Afr. v. United States*, 168 Fed. Cl. 788, 812 (2023) ("The public interest militates in favor of injunctive relief, as State would otherwise be permitted to award a contract based on irrational decisions and without adequate explanation for the exercise of its discretion.").

While there is a countervailing government interest in the continuity of operations, this cannot come at the expense of providing a fair and level playing field for all competitors in the federal marketplace and preserving the integrity of the public procurement process. *Am. Signature, v. United States*, 598 F.3d 816, 830 (Fed. Cir. 2010). Specifically in the context of government contracting, "Congress has determined that the public interest is served by the imposition of an automatic stay to allow the GAO an opportunity to ascertain the merits of a bid protest." *URS Fed. Servs., Inc. v. United States*, 102 Fed. Cl. 674, 677 (2012).

The Agency failed to perform the required FAR 3.104-7 review upon receiving a PIA report and now wishes to bypass the automatic CICA stay that Threat Tec deserves from its GAO

7

protest. Not to mention it ignores the voluntary stay under United Defense's protest. Maintaining

the status quo while matters are pending, and while the Agency conducts the required PIA inquiry,

protects taxpayer interests and confidence in the procurement process.

Dated: January 30, 2026

Respectfully submitted,

/s/ *Shomari B. Wade*

Shomari B. Wade
GREENBERG TRAURIG, LLP
2101 L Street, NW, Suite 1000
Washington, DC 20037
Tel: (202) 530-8515
Fax: (202) 331-3101
wades@gtlaw.com

*Counsel for Threat Tec, LLC*

*Of Counsel*:

Michael J. Gardner
GREENBERG TRAURIG, LLP
1750 Tysons Boulevard, Suite 1000
McLean, VA 22102
Tel: (703) 749-1303
Fax: (703) 749-1301
gardnerm@gtlaw.com

Jordan N. Malone
GREENBERG TRAURIG, LLP
2101 L Street NW, Suite 1000
Washington, DC  20037
Tel: (202) 530-8548
Fax: (202) 331-3101
jordan.malone@gtlaw.com

Olivia C. Bellini
GREENBERG TRAURIG, LLP
1750 Tysons Boulevard, Suite 1000
McLean, VA 22102
Tel: (215) 988-7860
Fax: (703) 749-1301

8

olivia.bellini@gtlaw.com